UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| METLIFE SECURITIES, INC., | ) |
| METLIFE INSURANCE COMPANY USA, | ) |
| METLIFE INVESTORS DISTRIBUTION | ) |
| COMPANY, METROPOLITAN LIFE | ) |
| INSURANCE COMPANY AND | ) |
| METLIFE, INC., | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) No. 2:16-CV-32 |
| | ) |
| PATSY A. HOLT, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

This matter is before the Court on Petitioner's Motion to Strike Respondent's Jury Demand [doc. 32], Petitioner's Brief in Support of the Motion [doc. 33], and Respondent's Response in Opposition [doc. 36]. For the reasons herein, the Court will grant the motion.

**I. BACKGROUND**

Respondent Patsy A. Holt ("Ms. Holt") opened several Individual Retirement Accounts with Petitioners ("MetLife") in Greeneville, Tennessee, four of which are at issue in this action. [Pet. to Compel Arbitration, doc. 1, ¶¶ 1, 52; Holt Dep., doc. 1-9, at 8:4–8, 21–23, 9:17–20, 10:15–25, 11:1–3, 14:4–14; Woods Decl., doc. 4-1, ¶ 5].[1] Ms. Holt personally signed the account application for one of the four accounts—account number

---

[1] Pincites to the record refer to the electronic page numbers.

1

Case 2:16-cv-00032-RLJ-MCLC Document 43 Filed 10/19/16 Page 1 of 15 PageID #: 661

XXXXX9324. [Holt Dep. at 14:4–17]. At the suggestion of MetLife's authorized representative in charge of the accounts, Mark Salyer ("Mr. Salyer"), Ms. Holt instructed her daughter, Lydia Salyer ("Ms. Salyer"), to sign the account applications for the three other accounts—account numbers XXXXX3828, XXXXX9931, and XXXXX8578—on her behalf. [*Id.* at 5:23–25, 6:1, 7:22–25, 8:1–25, 9:1–16, 10:15–25, 11:1–13].[2] Ms. Holt's name, Patsy A. Holt, appears in cursive in the signature block on those three account applications, [*see* Account Application 3828, doc. 1-2, at 2; Account Application 9931, doc. 1-3, at 2; Account Application 8578, doc. 1-4, at 2], but Ms. Holt did not view or read them, [Holt Dep. at 11:14–18]. In total, Ms. Holt claims to have invested more than $1,900,000 in the accounts. [Second Am. Compl., doc. 1-8, ¶ 19].

According to Ms. Holt, Mr. Salyer went on to misappropriate her funds, which are now almost entirely gone. [*Id.* ¶¶ 28, 30]. As a result, she sued Mr. Salyer and MetLife in the Circuit Court of Sullivan County, Tennessee, for breach of contract, conversion, failure to supervise, fraud, and negligence, alleging that MetLife is responsible for Mr. Salyer's misconduct. [*Id.* ¶¶ 25–35]. In response, MetLife filed in the state court a motion to compel arbitration, arguing that Ms. Holt has to arbitrate her claims because the four account applications contain arbitration provisions. [*See* Pet. to Compel Arbitration ¶ 9; State Court Order, doc. 7-2, ¶ 2]. In each account application, the arbitration provision reads:

> MetLife . . . and the purchaser of the shares, who is the signatory below . . . agree that any controversy . . . arising out of or relating to any transactions between [them] shall be determined by arbitration. . . . This

---

[2] MetLife alleges that Mr. Salyer "was Holt's son-in-law at the time." [Pet. to Compel Arbitration ¶ 1].

agreement and any arbitration hereunder shall be governed and construed in accordance with the laws of the State of New York . . . .

[Account Applications, doc. nos. 1-1, 1-2, 1-3, 1-4, at 3]. The court ruled that Ms. Holt's claims related to account number XXXXX9324 are subject to arbitration but reserved ruling on the arbitrability of the other claims until it could decide whether to allow discovery. [Woods Decl. ¶ 5]. Mr. Salyer, however, then filed for bankruptcy, and the court stayed the case for roughly three years. [Pet. to Compel Arbitration ¶ 9]. When the case resumed after the bankruptcy proceedings, the court permitted Ms. Holt to file a revised second amended complaint so she could allege that the arbitration provisions are unenforceable contracts of adhesion. [Woods Decl. ¶ 8; *see* Second Am. Compl. ¶ 22].

Around this same time, Ms. Holt claims that she and MetLife agreed to "a methodology" to resolve the case. [Woods Decl. ¶ 9]. According to Ms. Holt, the parties decided, in a series of e-mails, "to pursue a ruling from the state court judge on the issue of arbitration and then irrespective of who prevailed, they would mediate the underlying suit within sixty (60) days for the ruling." [*Id.*]. In pertinent part, the e-mails between the parties read:

- Ms. Holt's counsel: "[We] would propose . . . mediat[ion] within 90 days so as to allow for mutual discovery in the Holt matter pursuant to an agreed scheduling Order." [E-mail 1, doc. 7-1, at 1].

- MetLife's counsel: "MetLife is agreeable to mediating Holt within 90 days of the court's ruling on the arbitration issue. . . . I don't know of any reason we couldn't have a hearing on the [arbitration] issue in the next 30-45 days and get a final decision from [the state court]. Please let me know if that is acceptable." [E-mail 2, doc. 7-1, at 1].

- Ms. Holt's counsel: "Holt will be okay if we shorten it up to 60 days." [E-mail 3, doc. 7, at 2].

3

- MetLife's counsel: "[Y]ou never directly responded to the shortening on Holt from 90 days to 60 days. You are agreeable to the sixty days, are you not?" [E-mail 4, doc. 7-1, at 2].

- Ms. Holt's counsel: "[W]e're ok with the 60 days." [E-mail 5, doc. 7-1, at 2].

After exchanging these e-mails, MetLife renewed its motion to compel arbitration, prompting the state court to allow discovery on whether all four arbitration provisions are unenforceable contracts of adhesion. [State Court Order at 2]. The state court reserved ruling on this issue until it could conduct an evidentiary hearing, [*id.*], and the parties proceeded to conduct some discovery, which included depositions, interrogatories, and requests for production, [Woods Decl. ¶ 12].

MetLife then petitioned this Court to compel Ms. Holt to arbitrate her claims, seeking this recourse under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14. [Pet. to Compel Arbitration at 5–16]. Ms. Holt filed a Response in Opposition to MetLife's Petition [doc. 6], which she titled as a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." [Resp't's Resp. in Opposition at 1]. Construing Ms. Holt's response as a motion for summary judgment, the Court granted MetLife's Petition to Compel Arbitration in part, requiring Ms. Holt to arbitrate her claims under Account Application 9324. [*See* Mem. Op., doc. 8, at 26–29, 35]. The Court ordered an evidentiary hearing to determine whether the arbitration provisions in Account Applications 3828, 9931, and 8578 are enforceable. [*Id.* at 30–35]. About a week later, Ms. Holt filed a Second Response to MetLife's Petition [doc. 10]—essentially in the form of an answer based on Federal Rule of Civil Procedure 12(a)(4)(A)—and contemporaneously filed a Motion to Alter or Amend

4

Judgment [doc. 11] under Federal Rule of Civil Procedure 59(e). Around this time, she also made a Jury Demand [doc. 18] under Federal Rule of Civil Procedure 38.[3]

To resolve Ms. Holt's Motion to Alter or Amend Judgment, the Court canceled the evidentiary hearing, [Order, doc. 22, at 1], which overlapped with the parties' Stipulated Briefing Schedule for the motion [doc. 20]. While the Court considered the motion, MetLife proceeded to file a Motion to Compel Arbitration of the Remaining Claims [doc. 26], which the Court denied. [Order on Renewed Mot., doc. 30, at 1–3].[4] The Court also determined that Ms. Holt had not satisfied the criteria for an altered or amended judgment and denied her Motion to Alter or Amend Judgment. [Mem. Op., doc. 28, at 1–7]. The Court then rescheduled the evidentiary hearing, [Order, doc. 35, at 1], prompting MetLife to file its latest motion—its Motion to Strike Respondent's Jury Demand, which the parties have now fully briefed and is before the Court.

## II. THE FEDERAL ARBITRATION ACT

Under the plain language of the FAA, a party opposing arbitration is entitled to a jury trial upon satisfying two conditions: (1) showing that an issue of material fact exists as to the validity of an arbitration agreement and (2) demanding a jury trial "on or before the return day of the notice of application":

---

[3] Rule 38(b) states: "On any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d)."

[4] "There is no such animal as a 'renewed petition to compel arbitration,'" and "[t]he only way [MetLife] could have presented this argument . . . would have been to file a motion for reconsideration under either Rule 59(e) or Rule 60(b)," *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063–64 (9th Cir. 2005) (footnotes omitted), which is precisely how this Court treated MetLife's motion, [*see* Order on Renewed Mot. at 2].

5

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. *Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner specified by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.*

9 U.S.C. § 4 (emphasis added); *see Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("The party resisting arbitration bears 'the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act.'" (quotation and footnote omitted)); *see also Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001–03 (6th Cir. 2009) (concluding that the party opposing arbitration did not show that the record contained a material issue of fact and therefore had no right to a jury trial under § 4); *cf. Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (stating that the party challenging a petition to compel arbitration has the onus of proving that the claims at issue are not arbitrable). The FAA does not define the language "on or before the return day of the notice of application."

### III. ANALYSIS

MetLife first argues that the Court should strike Ms. Holt's demand for a jury trial because Ms. Holt failed to make her demand "on or before the return day of the notice of application." [Pet.'s Mot to Strike at 2–4 (quoting § 4)]. MetLife interprets the language the "return day of the notice of application" to mean the due date of Ms. Holt's response to MetLife's Petition. [*Id.* at 2]. Because nearly four months lapsed between Ms. Holt's

response to MetLife's Petition and Ms. Holt's demand for a jury trial,[5] MetLife claims that her demand is untimely under § 4. [*Id.* at 2–4]. MetLife also argues that even if Ms. Holt's request is timely, she is still not entitled to a jury trial because she has not satisfied her burden of showing that an issue of material fact exists in the record. [*Id.* at 4–7]. In response, Ms. Holt argues that: (1) her demand for a jury trial is timely under Rule 38; (2) the record contains genuine issues of material fact that warrant a jury trial; and (3) even if the Court determines that her request is untimely, it should use its discretion to specially panel a jury under § 4. [Resp't's Br. at 1–5].

### A. The Timeliness of Ms. Holt's Demand

Ms. Holt argues that the Court should look to Rule 38 to determine the timeliness of her demand for a jury trial because "[n]o case law exists defining the phrase 'on or before the return day of the notice of application." [*Id.* at 2]. This is not exactly true. At least a handful of courts—although they have not expressly defined this phrase—have relied on it to strike jury-trial demands when respondents file them after their opposition to a petition to compel arbitration is due. *See Uszak v. AT&T, Inc.*, No. 1:14-CV-2800-CAB, at *3 (N.D. Ohio July 15, 2015), ECF No. 25 (PACER), *aff'd sub nom Uszak v. AT&T Mobility Servs. LLC*, No. 15-4195, 2016 WL 3924241 (6th Cir. July 21, 2016);[6] *Gavino v. Eurochem Italia*, No. 01-1314, 2001 WL 1223576, at *1 (E.D. La. Oct. 15, 2001); *Rush v. Oppenheimer &*

---

[5] Ms. Holt filed her Response in Opposition to MetLife's Petition on April 14, 2016, and she filed her Jury Demand on August 3, 2016.

[6] The Court accessed the docket for this case by using Public Access to Court Electronic Records (PACER), which is an electronic database of federal court documents.

7

*Co.*, 638 F. Supp. 872, 876 (S.D.N.Y. 1986); *Starr Elec. Co. v. Basic Constr. Co.*, 586 F. Supp. 964, 966, 967 (M.D.N.C. 1982).

To deaden the impact of these cases, Ms. Holt maintains that her original Response in Opposition to MetLife's Petition was merely "jurisdictional," and therefore she contends that Rule 12(a)(4)(A)[7] permitted her to file her Second Response in Opposition—a responsive pleading—to MetLife's Petition. [Resp't's Br. at 2]. Ms. Holt argues now that because she filed her demand for a jury trial within fourteen days of her Second Response in Opposition, it is timely under Rule 38:

> Here, Holt filed a Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction or in the alternative, summary judgment on the jurisdictional issue based on evidence presented outside the pleadings. [Doc. 4]. Upon this Court's Order denying this motion, Holt had 14 days to file a response to the Petition to Compel Arbitration. Fed. R. Civ. P. 12(a)(4). Holt timely filed the response to the Petition well within the 14 day window and proceeded to timely request a jury trial within 14 days of her response, the last pleading directed at the issues, pursuant to Rule 38.

[*Id.*]. Ms. Holt's argument is a familiar one—she previously raised it, unsuccessfully, in her Motion to Alter and Amend Judgment—and it continues to puzzle the Court. In retesting this argument here, free from the difficult standard under Rule 59(e), Ms. Holt relies on *Guidotti v. Legal Helpers Debt Resolution, L.C.C.*, No. 11-1219 (JBS/KMW), 2016 WL 4163547 (D.N.J. Aug. 4, 2016).

---

[7] Rule 12(a)(4)(A) states: "Unless the court sets a different time, serving a motion under this rule alters these periods as follows . . . if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action[.]"

In *Guidotti*, the respondent demanded a jury trial on the issue of whether the parties had entered into a valid agreement to arbitrate under the FAA. *Id.* at *1. The respondent made the demand under Rule 38, and the petitioner challenged the demand as untimely under § 4. *Id.* In considering the petitioner's challenge, the court addressed "the interlocking nature of Section 4 of the FAA and Rule 38." *Id.* at *2. The court described the issue before it as whether § 4 "can be harmonized with Rule 38 . . . or whether [it] prescribes a separate and exclusive path for demanding a jury." *Id.* The court recognized that Rule 38 preserves an "inviolate" right of trial by jury, *id.* at *1, and partly because the petitioner cited no authority showing that § 4 supersedes Rule 38, it concluded that § 4 is not a respondent's exclusive means for demanding a jury under the FAA, *id.* at *2–3. Rather, § 4 is another procedure for demanding a jury and is "parallel" to Rule 38. *Id.* at *2; *but see Star Elec.*, 586 F. Supp. at 967 ("The Court cannot accept [the] argument that Fed. R. Civ. P. 38 applies here. [Section 4] has specific provisions for the demand . . . of [a] jury trial. The demand . . . provisions of Fed. R. Civ. P. 38 are inapplicable[.]" (citation omitted)).

The court in *Guidotti*, however, did not attempt to reconcile Rule 38 with the precise mandate under § 4 that requires a party to demand a jury "on or before the return day of the notice of application." Also, although the Federal Rules of Civil Procedure *can* "govern proceedings under the [FAA]" in some instances, they are inoperative when "the[] [FAA] provide[s] other procedures." Fed. R. Civ. P. 81(6)(B); *see Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 571–72 (7th Cir. 2007) ("[T]he Federal Rules [of Civil Procedure] do not preempt the FAA," and they "apply only to the extent that matters of procedure are not

9

provided for in the [FAA]" (citation and quotation omitted)); *Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 931 (11th Cir. 1990) ("It is only where the [FAA] is silent that the Federal Rules of Civil Procedure become applicable." (citation omitted)). Section 4 provides a procedure by which a respondent may demand a jury trial in a specific circumstance—namely when the validity of an arbitration agreement is at issue—and it is separate from the procedure under Rule 38. The timeliness of a demand under § 4 depends on when a respondent has filed the demand in relation to the "application," *see* § 4, whereas the timeliness of a demand under Rule 38 depends on when a party has filed the demand in relation to the "last pleading," *see* Rule 38. Section 6 of the FAA defines an "application" to be a filing that is "made and heard in the manner provided by law for the making and hearing of motions."

Several courts have interpreted this language to mean that an application, or a petition, under the FAA qualifies as a motion and not a pleading under the Federal Rules of Civil Procedure. *Cf. ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012) ("Pursuant to 9 U.S.C. § 6, petitions to compel are 'made and heard in the manner provided for by law for the making and hearing of motions.' [T]he civil rules . . . draw a clear and consistent distinction between *pleadings* and motions. This distinction simply precludes treating the one as the other." (quotations omitted)); *Questar Capital Corp. v. Gorter*, 909 F. Supp. 2d 789, 803 (W.D. Ky. 2012) ("Where § 6 of the FAA instructs that applications shall be made and heard in the manner of motions, the clear intent was to remove . . . the FAA from the ambit of pleadings and their attendant rules of civil procedure. The proceedings therefore would not be subject to the rules that apply

10

specifically to pleadings, such as Rules 8 and 12[.]"); *see Aames Funding Corp. v. Sharpe*, No. Civ.A.04-4337, 2004 WL 2418284, at *2 n.1 (E.D. Pa. Oct. 28, 2004) ("Under the FAA, a petition to compel arbitration is treated procedurally as a motion." (citing § 6)), *vacated on other grounds by Aames Funding Corp. v. Sharpe*, No. Civ.A.04-4337, 2004 WL 2980407 (E.D. Pa. Dec. 22, 2004); *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 910–11 (5th Cir. 1993) (noting that motions are not pleadings under the Federal Rules of Civil Procedure). Because proceedings under the FAA are not "subject to the rules that apply specifically to pleadings," *Gorter*, 909 F. Supp. 2d at 803, Ms. Holt's demand in response to the "last pleading" under Rule 38 is impracticable, and the Court is unable to recognize it, *see Star Elec.*, 586 F. Supp. at 967.

This fault line between the Federal Rules of Civil Procedure and the FAA also undercuts Ms. Holt's argument that the Court, after having denied her "jurisdictional" motion, must now recognize her Second Response in Opposition as a responsive pleading based on Rule 12(a)(4)(A). The Third Circuit in fact addressed this identical argument under the FAA in the context of a motion for vacatur, relying on § 6 to reject it:

> [The respondent] argues that [the petitioner's] application to the District Court for confirmation of the arbitration award was in the form of a pleading because the application featured numbered paragraphs like a pleading, was entitled "petition," and allegedly lacked a supporting memorandum of law, a form of order, and a supporting affidavit, as required by Local R. Civ. P. 7.1 of the United States District Court of the Eastern District of Pennsylvania. Thus, [the respondent] believes that Rule 12(a)(4)(A) is triggered because [the petitioner] filed a pleading and [the respondent's] jurisdictional Rule 12(b)(6) motion in response was denied. Therefore, according to [the respondent], it should have received 10 days after the denial of its Rule 12(b)(6) jurisdictional motion to file a responsive pleading arguing against confirmation on the merits. [The respondent] contends that, because it believed that it would have a later opportunity to

11

challenge the arbitration award on the merits, it did not make its merits arguments in its Rule 12(b)(6) motion and that the District Court's flouting of the Federal Rules of Civil Procedure denied [the respondent] its procedural due process rights.

We disagree. As an initial matter, [the petitioner's] application to the District Court for confirmation of the arbitration award was a motion, not a pleading. The FAA requires that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions . . ." 9 U.S.C. § 6. For [the respondent] to believe that [the petitioner] had filed a pleading, it had also to believe that [the petitioner] was not following the procedural requirements of the FAA to proceed by motion; [the respondent] made no such objection.

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 307–08 (3d Cir. 2006) (footnote omitted); *cf. Webster*, 507 F.3d at 571 (stating that a party who files a motion to vacate an award under the FAA must "provide[] the Court with *all matters* that it desires the Court to consider in support" of the motion (emphasis added) (quotation omitted)); *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994) ("Appellants contend that the court erred in reaching the merits of [the] petition. . . . [and] effectively granted . . . summary judgment[.] Appellants further contend that the court's failure to provide them with notice that it was treating [the] petition as a motion for summary judgment precluded them from fully pleading their claims in accordance with Fed. R. Civ. P. 12(b). We disagree. The court properly treated [the] petition as a motion in accordance with the express provision of the FAA.").

In short, Ms. Holt's Second Response in Opposition—which, again, is effectively a responsive pleading—is a nullity in the record. *See ISC Holding AG v. Nobel Biocare Invs. N.V.*, 759 F. Supp. 2d 294, 296 (S.D.N.Y. 2010) ("Petitioner initiated this proceeding to compel arbitration . . . . [u]nder the FAA" and "[t]hus, the respondent must oppose the

12

petition as it would a motion, *not by serving an answer*" (emphasis added) (citations omitted)); *Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. 12-11874-DJC, 2013 WL 3335022, at *6 (D. Mass. July 1, 2013) (stating that the respondent "unquestionably *could not have filed an answer*" in response a party's petition to compel arbitration under § 4 (quotation omitted)). The Court has a statutory obligation to resolve these proceedings with celerity. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) ("[I]n view of Congress's clear intent, in the [FAA], [courts must] move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."). Ms. Holt is not entitled to perpetuate this litigation with responsive pleadings or additional opposition to MetLife's Petition. She has already had her bite at the apple.

### B. The Burden of Raising a Material Factual Dispute

Ms. Holt argues that she has a right to a jury trial because issues of material fact are present in the record. [Resp't's Br. at 3]. Once again, § 4 provides that "[w]here . . . an issue [of fact] is raised, the party alleged to be in default may . . . on or before the return day of the notice of application, demand a jury trial of such issue[.]" Ms. Holt claims that the Court has already determined that the burden under § 4 rests with MetLife, that this burden requires MetLife to show that no factual dispute exists in the record as to whether the remaining arbitration provisions are valid, and that MetLife has not relieved itself of this burden. [Resp't's Br. at 3]. This is not what the Court determined. The Court was clear that the burden under § 4 belongs to Ms. Holt and that *she* had not yet discharged it:

> To be clear, the Court does not conclude that Ms. Holt has discharged her burden by establishing a genuine issue of material fact as to the enforceability of the arbitration provisions; rather the Court is unable to reach a decision on the issue

13

of arbitrability because the record is factually insufficient. The Court now must conduct a "restricted inquiry into factual issues," *Moses H. Cone*, 460 U.S. at 22, to determine whether an agency relationship exists between Ms. Holt and Ms. Salyer.[8]

[Memo. Op. at 33]. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (recognizing that the party opposing arbitration under the FAA must show that a genuine issue of material fact exists as to the arbitration agreement's validity); *see also Green Tree*, 531 U.S. at 91 (stating that the party challenging arbitration has the burden of proving that the claims at issue are not arbitrable); *cf. Mazera*, 565 F.3d at 1001–03 (concluding that the party opposing arbitration did not establish a material factual dispute and therefore did not justify the need for a jury trial under § 4). The question of whether Ms. Holt can satisfy her burden under § 4 is the precise matter that the Court intends to resolve at the evidentiary hearing. At this point, MetLife's contention that Ms. Holt has not raised factual issues that necessitate a jury trial is therefore premature, and the Court will not strike her demand on this basis.

### C. The Court's Discretion to Specially Call a Jury

Ms. Holt argues that the Court should rely on its discretion under § 4 to "call a jury to decide all factual issues . . . at the evidentiary hearing." [Resp't's Br. at 5]. The Court has no need to assemble a jury for the evidentiary hearing—it is an evidentiary hearing,

---

[8] In a previous order, the Court summarized this case's procedural posture by noting that it had "found genuine issues of material fact as to the enforceability of the arbitration provisions in [the remaining] account applications[.]" [Order on Renewed Mot. at 1]. This language is, admittedly, loose wording on the Court's part. Although the enforceability of these provisions remains in dispute, Ms. Holt has not yet raised this dispute to the level of a genuine issue of material fact, as the Court originally concluded in detail, and she retains her burden going into the evidentiary hearing.

14

not a trial. If Ms. Holt satisfies her burden under § 4 during the evidentiary hearing by raising an issue of material fact, *then* the Court must direct the parties to trial. *See* § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial therof.") At the appropriate time, if it arises, the Court will permit Ms. Holt to renew her request for the Court to use its discretion to specially summon a jury.

## IV. CONCLUSION

Ms. Holt's demand for a jury trial is untimely under § 4 of the FAA, and the Court must therefore strike it. MetLife's Motion to Strike Respondent's Jury Demand [doc. 32] is **GRANTED**. If the issue of arbitrability proceeds to trial, however, Ms. Holt has leave to request that the Court exercise its discretion to specially call a jury.

**IT IS SO ORDERED.**

ENTER:


s/ Leon Jordan
United States District Judge